IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GIANT CAB COMPANY,

   Plaintiff-in-Intervention,

vs.            No. 13-cv-00426 MCA/ACT

AMY BAILEY, in her official capacity
as the Clerk for the City of Albuquerque, *et al.*,

   Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

   This case is a First Amendment and Equal Protection challenge to Article XIII § 4(f) of

the Albuquerque City Charter ("§ 4(f)").   The parties have agreed that the Court may resolve

this case on the record before the Court, without taking live testimony.  By previous order,

Plaintiffs  Neal Greenbaum, Victor Jury, Gail Armstrong, and Dale Armstrong, and  Plaintiff-in-

Intervention Robert Torch were dismissed from this action for want of Article III standing,

leaving Plaintiff-in-Intervention Giant Cab Company ("Giant Cab")  as the sole Plaintiff.

   The Court makes the following findings of fact:

**I.**  **FINDINGS OF FACT**

   1.  Article XIII, § 4(f) of the Albuquerque City Charter provides:

*Ban on Contributions from Business Entities and City Contractors*. [1]  No
candidate shall accept a contribution in support of the candidate's campaign from
any corporation, limited liability company, firm, partnership, joint stock company
or  similar business entity or any agent making a contribution on behalf of such a
business entity.  [2] No candidate shall accept a contribution in support of the

candidate's campaign from any person, other than a City employee, who at the time of the contribution is in a contractual relationship with the City to provide goods or services to the City.  The remedy for an unknowing violation of this subsection shall be the return of the contribution.

2.      Pursuant to Article II, § 2, mayoral elections are held every four years.  Mayoral elections were held in 2001, 2005 and 2009.  A mayoral election will be held in October, 2013.

3.      Giant Cab is a corporation doing business in New Mexico;  Giant Cab does not have any contracts with the City.

4.      Giant Cab made a contribution to Janice Arnold Jones for City Council, but that donation was returned.  Giant Cab desires to make campaign contributions in Albuquerque municipal elections, and would do so but for § 4(f). [Doc. 43-1]

5.      Defendant Amy Bailey is sued in her official capacity as Albuquerque City Clerk. Her office  administers City elections, is the repository of various campaign finance statements required by Article XIII, and otherwise assists the Board of Ethics and Campaign Practices  in administering Article XIII.

6.      The Board of Ethics and Campaign Practices ("the Board") is responsible for enforcing the provisions of Article XIII.

7.      Article XIII, § 4(e) allows individuals to contribute to a candidate up to 5% of the annual salary for the office for which the candidate is running.

8.      Candidates who violate the contribution restrictions of § 4(f) are subject to a public reprimand, a fine, or both.  Article XIII § 10(e).  Candidates who are successful in an election and who have violated this provision may be further sanctioned by suspension or removal from office.  Article XIII § 10(g).

9.      Former Albuquerque Mayor Martin Chavez was publically reprimanded in 2003

by the Board for accepting valuable gifts from those with an interest in city affairs, failing to report certain campaign contributions and failing to abide by contribution limits. [ Doc. 48-1 to 48-6] The inquiry leading to the reprimand and the reprimand itself were reported in the *Albuquerque Journal*.

10.     In 2005, former State Treasurer Robert Vigil was indicted on federal extortion charges. [Doc. 22-1 at 14]; *United States v. Vigil*, Crim. No. 05-2051 JP.

11.     A procurement scandal surrounding the construction of the Bernalillo County Metropolitan Courthouse in Albuquerque led to the indictment state Senator Manny Aragon and others. [Doc. 22-1]; *United States v. Martinez,* et al., Crim. No. 07-615 JEC (D. N.M.). Former Albuquerque Mayer Ken Schultz was implicated in the scandal. *United States v. Schultz*, Crim. No. 07-518 JEC (D. N.M.).

12.     It is more likely than not that all the members of the City Council, and substantial numbers of Albuquerque voters, knew of the circumstances set out in the preceding three paragraphs, as these events were widely reported by the local media.

13.     During the February 5, 2007 City Council meeting at which § 4(f) was placed on the ballot, its sponsor, Councillor Michael Cadigan, represented to the City Council that the purpose of the provisions banning corporate campaign contributions was to "match federal law." Councillor Cadigan represented that the purpose of the provision banning contributions by city contractors was to remove the perception of "pay to play." City Attorney Robert White was present and spoke to First Amendment concerns presented by the city contractor ban. Councillor Cadigan observed that the entity and city contractor bans overlapped as most contractors would be covered by the entity contribution ban. Councilor Martin Heinrich spoke to

3

the interests of eliminating the public perception of "pay to play" politics and preventing

circumvention of the individual campaign contribution limits through "double dipping."   The

City concedes that "no City Councilor voiced any concern regarding actual 'pay to play'

corruption; rather, the debate centered on the appearance of impropriety." [Doc.47 at 3] The City

Counsel voted in favor of placing the proposed amendment before the voters.  [Doc. 14 at 21]

14.    The amendment containing  § 4(f)  was submitted to the voters on the Regular

Municipal Election Ballot of October 2, 2007.   Approximately seventy-two per cent of the

voters voted in favor of the amendment. [Doc. 14 at 23]

15.    Other than the passing comments by the City Council members referred to above,

the Court has not been presented with any legislative history of § 4(f).  There are no findings by

the City Council.  There is no evidence proffered that the City actually investigated the

relationship of corporate campaign contributions to *quid pro quo* corruption or the circumvention

of individual contribution limits or that the City Council conducted studies or surveys of voter

concerns with corporate campaign contributions. There was no discussion of why an absolute

ban on corporate contributions, rather than a contribution limit, was appropriate.

16.    There are no references in the record to evidence developed by other jurisdictions

that the City Council "reasonably believed to be relevant" to the problem of *quid pro quo*

corruption or the appearance of such corruption in Albuquerque municipal elections.  *See

Homans v. City of Albuquerque*, 366 F.3d 900 (10th Cir. 2004) (citing *City of Renton v. Playtime

Theatres, Inc.*, 475 U.S. 41, 51-52 (1986)).

17.    There is no evidence proffered that the City Council,  prior to enacting the

resolution placing § 4(f) on the ballot, considered objective evidence of the extent of

participation by business corporations in "pay to play" schemes or the use by individuals of the corporate form to circumvent individual contributions limits.

18.     The Court has noted the overwhelming support for the amendment containing § 4(f) among voters, but the Court has no way of knowing why these voters approved the amendment containing § 4(f).  The Court cannot determine whether they were motivated by the constitutionally permissible interest in eliminating or reducing *quid pro quo* corruption, or the appearance of such corruption, as opposed to the constitutionally infirm desire to single out corporate political speech for less favorable treatment based on the speaker's corporate identity.

19.     Article XIII, § 4(d) provides that a candidates for the offices of City Councilor and Mayor may not accept contributions in excess of twice the annual salary for the office sought.  Given the salaries authorized at the time that the City Council was considering placing Article XIII, § 4(f) on the ballot, individual campaign contributions were limited to maximums of $450 per election per candidate for City Council and $4500 per election per candidate for mayor.

20.     Prior to the enactment of Article XIII, § 4(f), combined contributions by an individual and an affiliated corporation rarely, if ever, exceeded the individual contribution limits described in the preceding paragraph.

In light of the foregoing, the Court enters the following conclusions of law:

## I.     CONCLUSIONS OF LAW

1.     Giant Cab has standing to challenge § 4(f)'s ban on contributions by business corporations.  *See Lavin v. Husted*, 689 F.3d 543, 546 (6th Cir. 2012) ("[T]he plaintiffs suffered cognizable harm under the First Amendment when the . . . campaign refused their campaign

contributions; and that refusal was plainly traceable to the statute challenged here." (internal citation omitted)).

2.      "Limits on contributions must be 'closely drawn to achieve a "sufficiently important" government interest.' . . . This distinguishes them from limits on expenditures, which are subject to strict scrutiny. . . . The Supreme Court has adhered generally to 'this line between contributing and spending.'"  *Vt. Right to Life Comm. v. Sorrell*, 875 F. Supp. 2d 376, 402 (D. Vt. 2012) (citations omitted); *accord Ognibene v. Parkes*,  671 F.3d 174, 182-83 (2d Cir. 2011).

3.      The closely-drawn standard applies both to limits and outright prohibition of corporate political contributions: "[T]he Supreme Court has held that while it is 'not that the difference between a ban and a limit is to be ignored . . . the time to consider it is when applying scrutiny at the level selected, not in selecting the standard of review itself.'"  *Thalheimer v. City of San Diego*,  645 F.3d 1109, 1124 n.4 (9th Cir. 2011) (affirming district court's denial of injunction against municipal ban on corporate campaign contributions).

4.      Prior to *Citizens United v. FEC*, 558 U.S. 310 (2010), the Supreme Court had recognized four government interests supporting restrictions on corporate political contributions: "anti-corruption, anti-distortion, dissenting-shareholder, and anti-circumvention." *United States v. Danielczyk*, 683 F.3d 611, 616 (4th Cir. 2012).  "*Citizens United* preserved two of the four important government interests recognized in *Beaumont*:  anti-corruption and anti-circumvention."  *Id.* at 618. *Citizens United* expressly rejected the anti-distortion rationale, and disapproved of the dissenting shareholder rationale.  *Id.* at 618-19.

5.      Given existing precedent, there is no question that preventing *quid pro quo* corruption or the appearance of corruption and preventing the circumvention of individual

campaign contribution limits are important government interests.

6.    "[T]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S.377, 391 (2000). Restrictions on corporate campaign contributions are not novel. Congress and various state legislatures have barred corporations from making direct contributions to candidates for over a hundred years. *Citizens United*, 558 U.S. at 343. Given this history, a ban on corporate campaign contributions is neither novel nor implausible, and therefore the Court concludes that the City's evidentiary burden is toward the lower end of the scale. Even though this evidentiary burden may be comparatively light, the First Amendment requires something more than "mere conjecture" about the necessity for a given restriction on campaign contributions. *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653 (9th Cir. 2007) (discussing *Shrink Missouri Gov't*).

7.    Although the proponents of § 4(f)'s ban on corporate contributions have identified two important interests that conceivably could be furthered by the ban on corporate contributions--eliminating or reducing the appearance of "pay to play" corruption or the circumvention of individual campaign contribution limits, they have not satisfied their evidentiary burden of showing that§ 4(f) is closely drawn to further those interests. The First Amendment problem with § 4(f) derives from the City Council's approach of simply taking another jurisdiction's contribution restrictions "off the rack," without meaningful consideration of whether those restrictions fit local conditions.

8.    Unless and until the City Council develops an evidentiary record demonstrating

(1) a likelihood that there  is a perception among Albuquerque voters that corporate campaign contributions lead to "pay to play" corruption or that corporate contributions are employed to circumvent individual contribution limits and (2) that there is a close fit between a complete ban on corporate contributions and the stated goals of reducing the perception among voters of "pay to play" corruption and preventing circumvention of individual contribution limits, §4(f)'s ban on corporate campaign contributions cannot be sustained in the face of a First Amendment challenge.

9.      The portion of Article XIII, § 4(f) providing that "[n]o candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company or similar business entity or any agent making a contribution on behalf of such a business entity" violates the First Amendment. when applied to business corporations such as Giant Cab.

10.      Plaintiff is entitled to declaratory and injunctive relief, which the Court will order in a separate judgment.

11.      In view of the Court's  determination that Article XIII, § 4(f) violates the First Amendment, the Court will not address Plaintiffs Equal Protection challenge.

**Entered this 4ᵗʰ  day of September, 2013.**


M. CHRISTINA ARMIJO
Chief United States District Judge